UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANNY EDWARD OLMSTEAD,

    Petitioner,

  v.

JEFF PREMO, Superintendent,
Oregon State Penitentiary

    Respondent.
_____

Case No. 6:16-cv-00129-MC

OPINION AND ORDER

MCSHANE, District Judge:

    Petitioner, an inmate at the Oregon State Penitentiary, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges that his trial counsel rendered ineffective assistance by failing to challenge the admissibility of expert testimony and the sufficiency of the evidence supporting conviction. Respondent contends petitioner's claims were denied in a state court decision that is entitled to deference. For the reasons explained below, the petition is denied.

BACKGROUND

In 2007, after trial before the court, petitioner was convicted three counts of first-degree rape, one count of second-degree rape, five counts of first-degree sexual abuse, and three counts of first-degree unlawful sexual penetration. Resp't Ex. 101. Petitioner's convictions arose from the sexual abuse of his step-daughter over a period of several years.

Among other evidence, the State presented the testimony of the victim, the testimony of a physician who diagnosed the victim with sexual abuse, and evidence that petitioner's DNA matched sperm cells found on the victim's underwear and in her genital area. Resp't Ex. 103 at 14-19, Ex. 105 at 16-21, Ex. 106 at 6-7. Petitioner's counsel presented the testimony of an expert and a physician to counter the State's evidence, and counsel questioned the victim about an alleged recantation of the allegations and suggested she might have had a motive for lying. Resp't Ex. 103 at 25-26, 29, Ex. 106 at 10-14, 16. Petitioner testified on his own behalf and offered an explanation regarding the presence of his semen in the victim's underwear. Resp't Ex. 106 at 20-21.

The trial court found petitioner's testimony not credible and convicted him on all charges. Resp't Ex. 106 at 32-34 ("I, as a finder of the fact, make a specific finding that the defendant lied under oath, and therefore will disregard his testimony."). At sentencing, the trial court imposed consecutive sentences totaling 1050 months' imprisonment, plus an additional 10 months for a charge of failure to appear in the first degree. Resp't Ex. 101, Ex. 107 at 7-8, Ex. 102 at 6.[1]

Petitioner directly appealed his convictions and asserted trial court error based on insufficiency of the evidence. Resp't Ex. 108, 110. The Oregon Court of Appeals affirmed

---

[1] After his initial arrest in January 2006, petitioner was released on bail and eventually absconded, failing to appear for trial scheduled in September 2006. Resp't Ex. 104 at 8-9, 19. Petitioner subsequently was arrested by the United States Marshals Service.

Page 2   - OPINION AND ORDER

without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 111-12; *State v. Olmstead*, 231 Or. App. 254, 218 P.3d 179 (2009), *rev. denied,* 348 Or. 13, 227 P.3d 1172 (2010). Petitioner subsequently filed a petition for post-conviction relief (PCR) alleging ineffective assistance of counsel, and the PCR trial court denied the petition. Resp't Exs. 113-14, 135. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 138-40; *Olmstead v. Premo*, 274 Or. App. 722, 364 P.3d 755 (2015), *rev. denied*, 358 Or. 611, 369 P.3d 386 (2016).

On January 25, 2016, petitioner filed this federal habeas action under 28 U.S.C. § 2254.

## DISCUSSION

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to object to the sufficiency of the evidence and to the testimony of Dr. Larsen, a physician who examined the victim and diagnosed sexual abuse. Pet. at 4 (ECF No. 2). Petitioner failed to submit any briefing or argument in support of these claims and has not met his burden of establishing entitlement to habeas relief. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a habeas petitioner bears the burden of proving his claims). Moreover, the PCR court rejected petitioner's ineffective assistance of counsel claims, and the PCR court's decision is entitled to deference.

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly

established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). Essentially, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

Under well-established Supreme Court precedent, a prisoner alleging ineffective assistance of counsel must show that 1) "counsel's performance was deficient," and 2) counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Judicial review of an attorney's performance under *Strickland* is "highly deferential" and carries a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which, under the relevant circumstances, "might be considered sound trial strategy." *Id.* at 689 (citation omitted).

As found by the PCR court, petitioner's trial counsel moved for a "directed verdict of acquittal" on all charges at the conclusion of the State's case-in-chief and renewed his "previously submitted demurrer" to the charges. Resp't Ex. 135 at 3; *see also* Resp't Ex. 106 at 27. The trial court denied the motions, and the PCR court found "sufficient evidence at the time" to support denial of the motions. Resp't Ex. 135 at 3. Indeed, in addition to the victim's detailed testimony that petitioner repeatedly raped and abused her, the State submitted evidence that sperm cells discovered on the victim's underwear and in her genital area matched petitioner's DNA. Resp't Ex. 106 at 6-7. Further, an examining physician, Dr. Larsen, testified that the

Page 4   - OPINION AND ORDER

victim – at the age of 12 – had a "completely transected hymen" consistent with sexual abuse. Resp't Ex. 105 at 16-18. Thus, the PCR court's finding of no deficiency of performance or resulting prejudice was not an unreasonable application of *Strickland*.

The PCR court likewise found that counsel was not deficient for failing to object to the testimony of Dr. Larsen. The PCR court rejected petitioner's argument that Dr. Larsen vouched for the credibility of the victim and found that Dr. Larsen's testimony was not improper "vouching. There was physical evidence [and the doctor was] allowed to discuss [the victim's] demeanor, intellect, etc. Never touched on [the victim's] credibility." Resp't Ex. 135 at 2. Again, the record supports the reasonability of the PCR court's findings. Dr. Larsen's testified primarily and extensively about her physical findings and diagnosis, while briefly noting that the victim's statements "were clear, consistent, age appropriate, and embarrassing for her to discuss." Resp't Ex. 105 at 21. The PCR court was not unreasonable in finding that Dr. Larsen was recounting her observations of the victim's statements in the context of her examination, and that counsel was not deficient in failing to object to her testimony.

In sum, the PCR court's decision was neither contrary to nor an unreasonable application of *Strickland*. Accordingly, petitioner's claims of ineffective assistance of trial counsel are denied.

Even though petitioner submitted no briefing or argument in support of the claims in his petition, he nonetheless moves for an evidentiary hearing to "present newly discovered evidence" and "to develop actual innocence" claims. Pet'r Aff. at 1 (ECF No. 20). Petitioner is not entitled to an evidentiary hearing unless he can show that the "factual predicate" for his claim "could not have been previously discovered through the exercise of due diligence" and that such facts would "establish by clear and convincing evidence that but for constitutional error, no

reasonable factfinder" would have found him guilty. 28 U.S.C. § 2254(e)(2)(A)(ii),(B). Petitioner does not make this showing.

Petitioner seemingly presents a free-standing "actual innocence" claim; he does not assert actual innocence to support or overcome the procedural default of a distinct constitutional claim.[2] Rather, petitioner asserts that the victim lied about the abuse and submits four witness affidavits in support of his motion. As an initial matter, it is unsettled whether a petitioner may bring a free-standing actual innocence claim in a non-capital case. *See House v. Bell*, 547 U.S. 518, 554-55 (2006); *Jones v. Taylor,* 763 F.3d 1242, 1246 (9th Cir. 2014). Moreover, three of the four affidavits presented by petitioner were signed in March 2014 and none contain or reference "newly discovered" evidence. Notably, petitioner did not present his actual innocence claim or the affidavits at any time during his PCR proceedings or in his federal habeas proceeding until now. A new habeas claim raised in 2017 would appear to be untimely and barred by the statute of limitations because it does not relate back to the claims in the original petition. *See* 28 U.S.C. § 2244(d)(1) (one-year statute of limitations applies to habeas claims); *Mayle v. Felix*, 545 U.S. 644, 657, 664 (2005). Regardless, petitioner's evidence does not come close to meeting the "extraordinarily high" showing necessary to establish a claim of actual innocence, and I need not decide whether such a claim is cognizable or equitably tolls the statute of limitations. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).

In support of his motion, petitioner submitted affidavits from four witnesses, including two fourteen-year-old relatives who provide hearsay statements claiming they heard the victim

---

[2] If a claim is unexhausted or otherwise barred by procedural default, a federal court may consider the claim only if the petitioner demonstrates cause for the default and actual prejudice, or if the lack of federal review would result in a "fundamental miscarriage of justice" due to the petitioner's actual innocence. *Edwards v. Carpenter*, 529 U.S. 446, 451(2000); *Schlup v. Delo*, 513 U.S 298, 327 (1995).

Page 6   - OPINION AND ORDER

recant her allegations in 2013. Pet'r Aff. Exs. 1-2.[3] However, post-trial affidavits are "disfavored" because they are "obtained without the benefit of cross-examination" *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Such affidavits are "particularly suspect" when "they consist of hearsay." *Id.* Petitioner's hearsay affidavits are no exception to this rule and do not remotely diminish the overwhelming evidence of petitioner's guilt. As noted above, the victim identified petitioner as her abuser and provided consistent and detailed testimony of the abuse, petitioner's DNA matched sperm cells found in the victim's genital area and on her underwear, and the victim's physical examination was consistent with sexual abuse. Resp't Ex. 103 at 14-19, Ex. 105 at 5-7, Ex. 106 at 5-6, 31. Furthermore, the State presented evidence that petitioner called his wife after his arrest and instructed her to destroy sheets and bedding before police officers arrived, and that petitioner told his pre-trial cellmate that he "would get his wife's daughter high

---

[3] Petitioner also submitted affidavits of the victim's maternal grandmother and his ex-wife. The grandmother's affidavit contains no recantation statement and does not support actual innocence. Pet'r Aff. Ex. 3. Likewise, petitioner's wife merely provides her lay opinion of the State's evidence and accuses the prosecutor of threatening her with arrest if she testified in support of petitioner. *Id.* Ex. 4. This claim is not new; petitioner raised it in his PCR proceedings and it was rejected by the PCR court. Resp. Ex. 135at 2-3. As the PCR court found, petitioner's wife had been indicted on a charge of tampering with evidence (as a result of destroying evidence at petitioner's direction) and was the subject of a no-contact order regarding the victim, who was her daughter. Resp't Ex. 131, Ex. 135 at 2. The prosecutor merely reminder petitioner's counsel that petitioner's wife could be held in contempt if she continued to appear at the courthouse when she knew her daughter was there. Resp't Ex. 131 at 2, Ex. 134 at 34-35. The PCR court further questioned whether petitioner's wife "would have been a good witness for" him, in light of the tampering charge and the likelihood that she would have invoked the Fifth Amendment had she been called to testify. Resp't Ex. 135 at 2-3.

Petitioner also submitted a 2017 e-mail chain purportedly between his ex-wife and a physician regarding the physician's willingness to provide an opinion regarding the appearance of a girl's vaginal area if subjected to repeated sexual abuse. Pet'r Aff. Ex. 5. The physician did not render an opinion and stated only that he or she must be paid before providing an opinion. This email discussion does not remotely suggest actual innocence, and the physician's opinion would be highly suspect and barred from review in any event.

and have sex with her."[4] Resp't Ex. 103 at 12, Ex. 104 at 13, 15-19; Ex. 106 at 31-32. In light of the evidence presented against petitioner, it is unfathomable that "no reasonable factfinder would have found" petitioner guilty of sexual abuse.

Finally, in his motion petitioner also complains that trial counsel did not obtain expert testimony to rebut the State's evidence and that the prosecutor threatened his wife with arrest if she testified. These claims are not newly discovered; petitioner raised both of these claims in his PCR petition and they were rejected by the PCR court. Resp't Ex. 113, Ex. 135. Moreover, petitioner did not appeal the PCR court's ruling on these claims, and he can no longer do so. Or. Rev. Stat. §§ 138.071(1), 138.650(1); Or. R. App. P. 5.45(1) (assignment of errors not raised or argued are waived). Accordingly, these claims were not fairly presented to Oregon's highest court and they are unexhausted and barred by procedural default. 28 U.S.C. § 2254(b)(1)(A) (a state habeas petitioner must exhaust all available state court remedies before a federal court may consider granting habeas corpus relief); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (to meet exhaustion requirement, a petitioner must "fairly present" a federal claim to the State's highest court); *see also Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991) (if a claim was not fairly presented to the state courts and no state remedies remain available, the claim is barred from federal review through procedural default).

---

[4] Specifically, the State introduced evidence that petitioner telephoned his wife after his arrest in January 2006 and told her it was "a burn day" and to dispose of sheets and bedding. Resp't Ex. 106 at 28. The victim's stepbrother testified that he helped remove sheets and bedding from the victim's and petitioner's rooms and took them to a burn pile started by petitioner's wife. Resp't Ex. 104 at 16-19. When police arrived with a search warrant, they found ashes in the burn pile and could not locate the bedding described by the victim. Resp't Ex. 104 at 5-6. According to the stepbrother, one particular item described by the victim – a Harley Davidson blanket – was returned to the home by petitioner's wife a few days after the warrant was served. Resp't Ex. 103 at 29, Ex. 104 at 19.

Regardless, as noted by the PCR court, petitioner's trial counsel retained Dr. Ray Grimsbo, who testified for the defense and attempted to support petitioner's theory and challenge the State's evidence. Resp't Ex. 106 at 10-12. And, as the PCR court found, the prosecutor did not threaten petitioner's wife with arrest if she testified in support of petitioner at trial. Rather, petitioner's wife was barred from contacting the victim, her daughter, and the prosecutor informed petitioner's attorney that his wife could be found in contempt if she continued to appear at the courthouse while the victim was present. Resp't Ex. 131 at 2, Ex. 134 at 34-35, Ex. 135 at 2.

Accordingly, petitioner fails to meet his burden of showing that he is entitled to habeas relief or an evidentiary hearing.

## CONCLUSION

Petitioner's Motion for Evidentiary Hearing (ECF No. 19) and the Petition for Writ of Habeas Corpus (ECF No. 2) are DENIED and this case is DISMISSED. All other pending motions are denied as moot. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

DATED this __3rd__ day of August, 2017

    s/ Michael J. McShane
Michael McShane
United States District Judge